IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISRAEL DIAZ | : | CIVIL ACTION |
| | : | NO. 10-5939 |
| v. | : | |
| | : | |
| SERGEANT WILLIAM ABERTS | : | |
| OFFICER RODNEY SIMIONE | : | |
| | : | |
| | : | |

O'NEILL, J.                                                    FEBRUARY 4, 2013

## MEMORANDUM

Now before me is defendants Sergeant William Aberts and Officer Rodney Simione's

motion for summary judgment (Dkt. No. 37), plaintiff Israel Diaz's response thereto (Dkt. No.

38), and defendants' reply in support of their motion (Dkt. No. 39). For the following reasons I

will deny defendants' motion.

### I.     Background Facts and Procedural History

On May 14, 2010, Diaz was incarcerated at Lancaster County Prison.[1]  Around 12:30 pm

defendant correctional officers Sergeant Aberts and Officer Simione and nondefendants Sergeant

Steberger-Simione and Officer Sherpos were called to the Medical Housing Unit of the prison to

assist Nurse Jennifer Wynn in administering Diaz's court-ordered medication.  See Def.'s Mot.

Summ. J. ECF p. 5; see also Def.'s Mot. Summ. J. Ex. E, Aberts Dep. 109:21-23.  Prior to

anyone's entrance into Diaz's cell, Diaz was handcuffed through a hole in his cell door.  Def.'s

Mot. Summ. J. ECF p. 6; see also Video Tr. 14:23.  A tether was also attached to the handcuffs

---

[1] The parties here have provided me with a videotape of the following events.
Accordingly, I will review the facts depicted in the videotape and, to the extent that there is a
genuine dispute as to those facts, will view them in the light most favorable to the nonmoving
party and draw all inferences in that party's favor.  Scott v. Harris, 550 U.S. 372, 380-81 (2007).

for extra control of Diaz.[2]  Def.'s Mot. Summ. J. ECF p. 6.  Defendants and the other officers

then entered the cell in order to restrain Diaz and allow Nurse Wynn to give Diaz his injection,

which she did after following them inside; Wynn then left the cell, followed by Steberger-

Simione, Sherpos, and Simione.  Def.'s Mot. Summ. J. ECF p. 6; see also Video Tr. 14:23-16:18.

Diaz, hooked to the tether and still handcuffed, was walked back to his cell door by Aberts, who

retained control of the tether.  Pl.'s Op. Br. ECF p. 12; see also Video Tr. 16:23-16:45.  During

this time, Diaz was yelling continuously and intermittently threatening violence upon various

prison personnel by name, including Simione.  Video Tr. 14:23-17:03.

    The next events, though captured on video, occurred rapidly.  While the tether was being

unhooked, Diaz pulled back on the tether at least once through the hole in his cell door.  Id. at

16:47-50.  This led the officers to reenter his cell.  Id. at 17:03.  Simione was the first officer

back inside and he grabbed Diaz and began to attempt to restrain him by applying "pressure

points," Def.'s Mot. Summ. J. ECF p. 7, to his head and neck and then a chokehold; Aberts

immediately followed Simione into the cell and the two together pushed Diaz to the back wall of

the cell and then onto the bed.  Video Tr. 17:04-15.  Aberts can be heard shouting that Diaz had

shut him in the door, id. at 17:16, and he then twice yelled "you think you're tough?" at Diaz,

who at this point was pinned to his bed.  Id. at 17:20-24.  During this time, Aberts was on top of

Diaz, Simione was positioned toward Diaz's head and shoulders, his hands obscured by Aberts's

and his own body, and Diaz appeared to be lying face up on his back.  Id. at 17:12-18-10.  The

---

[2] A tether is a leather strap that clips to the end of the handcuffs on one end and loops
around the wrist of the correctional officer on the other hand.  Def.'s Mot. Summ. J. ECF p. 6;
see also Def.'s Mot. Summ. J. Ex. E, Aberts Dep. 49:8-50:3. The purpose of the tether is to
control a handcuffed inmate.  Def.'s Mot. Summ. J. ECF p. 6; see also Def.'s Mot. Summ. J. Ex.
E, Aberts Dep. 50:9-19.

other officers followed Simione and Aberts into the cell and pinned Diaz's legs down against the bed. Id. at 17:18-24. The struggle continued and the parties dispute exactly what happened next.

Diaz alleges that Simione punched him twice while he was restrained on the bed. Pl.'s Op. Br. Ex. D, Diaz Dep. 21:3-4 ("I was lying on my back and was punched twice by [Simione]"). The video on this point is unclear, but Simione, whose hands were obscured, can be seen moving his arms near Diaz's head and upper torso. Video Tr. 17:29, 31. It is clear, however, that Aberts used his knees to pin down Diaz, id. at 17:30-39, and Aberts also used his right knee to strike Diaz while Diaz remained pinned on the bed by the other officers. Id. at 17:31-32. Aberts also can be heard yelling at Diaz after kneeing him: "don't you fucking come up." Id. at 17:32. Aberts then warned Diaz not to resist again or he "will strap him to the [ ] bunk." Id. 17:41-48. After a few seconds, Aberts instructed Diaz to grab his hand three times, id. at 17:57, while Diaz remained pinned down, and Diaz's labored breathing is audible on the video. Id. at 17:58-18:10. Steberger-Simione can be heard to say, "make sure he's breathing," id. at 18:02, to which Aberts replied "he's breathing," id. at 18:04; Aberts then repeated himself several seconds later. Id. at 18:11 ("That a boy; he's breathing."). Diaz at this point appears to have ceased resisting.

Aberts, Simione and Sherpos then raised Diaz to a standing position and moved Diaz to the floor, placing him first on his knees and then bringing him to rest face down on the cell floor. Id. at 18:15-58. The officers then called for someone to photograph Diaz's injuries as well as for the nurse to return to the cell. Id. at 18:23-40. During this time, Aberts can be heard telling Diaz: "wrong group of people." Id. at 18:26. At this point, Diaz was being restrained by the officers and was lying face down on the floor. Id. at 18:59. The officers then stood Diaz up again, moved him to a seated position on the bed, id. at 20:20-33, and pictures were taken of his

head and neck.  Id. at 20:40-21:26.  Nurse Wynn at this point returned and cursorily examined

Diaz.  Id. at 21:30 - 22:00.  During this time she asked about Diaz's nose, which appeared to be

bleeding: "where was he injured at?", id. at 21: 30, and "how'd he hit it, facedown?", id. at

21:44.  "On the bunk," replied Aberts.  Id. at 21:45.  Wynn can be heard saying that Diaz's nose

"doesn't look like it's broken," id. at 21:51, but that it "looks like [his nose was] bleeding from

the inside."  Id. at 21:59.  Diaz then said, "I'm all right."  Id. at 22:00.  The officers then stood

Diaz up again, Aberts said "we're gonna do this the right way," id. at 22:25, and the officers

walked Diaz back to front of cell, where the officers all exited and Diaz was untethered and

uncuffed.  Id. at 22:20-23:23.

Diaz initiated the present action on November 1, 2010 by filing for leave to proceed in

forma pauperis.  Diaz filed his complaint pro se on November 5, 2010 and subsequently moved

for appointment of counsel, a motion this Court granted on June 8, 2011.  Diaz filed an amended

complaint on February 17, 2012 alleging constitutional violations for "malicious and sadistic use

of force" under the Eighth Amendment against both defendants and a claim for "failure to

intervene" under the Eighth Amendment against defendant Aberts only.  Am. Compl. p. 3-4.

Defendants filed answers on March 7, 2012.  Discovery was completed on March 20, 2012.

I heard oral arguments on defendants' motion for summary judgment on December 6,

2012.

## II.    Standard of Review

Summary judgment will be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of demonstrating that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## III.    Discussion

Defendants move for summary judgment arguing that there are no issues of material fact and that each are entitled to judgment as a matter of law.  In support of their motion, defendants make three arguments: first, that the video reveals that the force employed by defendants was

reasonable, measured and a good faith effort to maintain discipline and thus as a matter of law was not constitutionally excessive; second, defendants contend that to the extent Diaz suffered any injuries, the injuries were de minimis and thus no constitutional violation has occurred; third, specific to Diaz's claim under the Eighth Amendment against Aberts for "failure to intervene," Aberts argues that no underlying constitutional violation occurred and, even if one did occur, Aberts did not have a reasonable opportunity to intervene and thus cannot be held liable.  Def.'s Mot. Summ. J. ECF p. 4.  Defendants also argue that "even if the Court finds the issue too close to call in this case, the Defendants are nevertheless entitled to qualified immunity" because they "acted in good faith in response to a tense and potentially explosive situation in which an inmate, with a violent history towards correctional officers, attempted to harm them."  Id. at ECF p. 15-16.  Defendants assert that because Diaz has not shown that they "acted maliciously or that there was some constitutional standard that they were aware that they were violating," they are entitled to qualified immunity.  Id. at 16.

Diaz responds that the video demonstrates that there are genuine disputes of material fact that preclude summary judgment on his excessive force claim, namely: (1) whether defendant Simione punched Diaz; (2) whether defendant Aberts kneed Diaz in the stomach; (3) whether Diaz was choked so that his breathing was impaired; (4) "whether Defendants' actions were motivated by a desire to teach [ ] Diaz a lesson, as suggested by—among other things—Defendant Aberts's statement that Mr. Diaz messed with the 'wrong group of people,'" Video Tr. at 18:26; and (5) the extent of Diaz's injuries.  Pl.'s Op. Br. ECF p. 3.  Diaz also argues that summary judgment is precluded because the record contains ambiguities as to whether force was necessary to neutralize Diaz in the first place, whether the amount of force utilized was reasonable under the circumstances and whether force was employed longer than was necessary.

Id. at ECF p. 17-19. Moreover, Diaz contends that a reasonable jury could determine from the video alone that the defendants acted with malice with the purpose of harming Diaz. Id. at ECF p. 20. Finally, Diaz asserts that the extent of his injuries is pertinent to his Eighth Amendment excessive force claim in two ways: first, the extent of his injuries is in dispute and that this dispute precludes summary judgment, id., and second, that the proper inquiry is "not the nature or extent of the resulting injuries" but the "nature of the force used and the circumstances under which it was exerted," and that the latter issues, which remain ambiguous on the video of the incident in question, are not appropriately resolved at summary judgment. Id. at ECF p. 21-24.

Specific to the failure to intervene claim against Aberts, Diaz contends there is a material dispute as to whether Aberts witnessed excessive force being used or had a reasonable opportunity to intervene, and that these issues precludes summary judgment. Id. at 26-27.

Finally, Diaz asserts that the same issues of material fact which make summary judgment inappropriate also make the application of qualified immunity at this stage "premature," namely because whether "Aberts and Simione punched, kneed and [choked ] Diaz while he was lying handcuffed on his bed" is "hotly contested." Id. at 27-28. Diaz thus argues that qualified immunity is inappropriate because Diaz has demonstrated issues of material fact as to whether the defendants violated his constitutional rights to be free from excessive force. Id. at 28-29.

a. Excessive Force

The Supreme Court instructs prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). However, the Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes, Wilson v. Seiter, 501 U.S. 294, 296-97

(1991), and "serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Wesley v. Hollis, No. 03-3130, 2007 WL 1655483, at *7 (E.D. Pa. June 6, 2007), citing Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000). The central question in a claim of excessive force is whether the prison official applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002), quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992). Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106, quoting Whitley v. Albers, 475 U.S. 312, 322 (1986). To make this determination, courts must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response." Smith, 293 F.3d at 649, quoting Whitley, 475 U.S. at 321. Force that exceeds that which is reasonable and necessary under the circumstances is actionable. Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009), citing Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir. 1984), aff'd, 471 U.S. 1134 (1985).

Finally, in cases where the pertinent events are captured on video, courts should not rely merely on the parties characterizations of the events but rather should view the facts as they are depicted by the videotape. Scott v. Harris, 550 U.S. 372, 380-81 (2007). If, viewing the evidence in the light most favorable to Diaz, no reasonable finder of fact could view the video of the incident and determine that the defendants acted maliciously and sadistically, summary

judgment is appropriate.  <u>Tindell v. Beard</u>, 351 F. App'x 591, 596 (3d Cir. 2009).  In reviewing

the videotape of the incident, drawing all reasonable inferences in favor of Diaz and applying the

<u>Whitley</u> factors, I find that a reasonable jury could find that Aberts and Simione employed

excessive force against Diaz and summary judgment is not appropriate as to the excessive force

claim.

> I.    *Applying the <u>Whitley</u> Factors to the Conduct of Aberts and Simione*

Under the first <u>Whitley</u> factor, which examines the "need for the application of force," I

find that while there might well have been a need for the application of force the force required

was modest and there were alternatives to the physical force employed.  <u>See, e.g.</u> <u>Santiago v.</u>

<u>Fields</u>, No. 05-4884, 2009 WL 693642, at *5 (E.D. Pa. Mar. 12, 2009); <u>see also</u> Pl.'s Opp. Br.

Ex. K, "Lancaster County Prison Use of Force Policy," p. 11-12.  The record reveals that when

Aberts sought to remove the tether Diaz resisted and pulled back on the tether, which led the

officers to reenter Diaz's cell.  Video Tr. 16:47-17:3.  Aberts testified that he "was being pulled

into the wicket hole[3]" by Diaz and that his "arms were ultimately going to be inside of the cell"

and because "the tether could ultimately be used as a weapon" Aberts deemed it necessary for

the officers to reenter the cell to retrieve it.[4]  Pl.'s Opp. Br. Ex. C, Aberts Dep. 115:7-116:2. The

necessity of force in this instance, however, is tempered by the fact that Diaz remained in

handcuffs throughout the incident and upon the officers' reentry Diaz can be heard protesting

that he was not resisting the officers.  <u>See</u> Video Tr. 16:47-17:15 (<u>see, e.g.</u>, <u>id.</u> at 17:08, where

upon the officers' reentry Diaz repeatedly yells, "I ain't doing shit").  Moreover, Diaz was

---

[3] This refers to an opening in a cell door used by prison officials to, among other things, handcuff an inmate's hands prior to entering the cell. Pl.'s Opp. Br. ECF p. 11, <u>see also</u> Pl.'s Opp. Br. Ex. C, Aberts Dep. 51:2-4.

[4] Aberts also testified that he could have released the tether rather than ordering the cell door opened.  Pl.'s Opp. Br. Ex. C, Aberts Dep. 132:24-133:2.

outnumbered by four officers, was in his cell, did not attempt to strike or hit the officers and was also immediately overpowered by Aberts and Simione. Video Tr. 17:03-17:48. Thus I find that while force may have been necessary, the record reveals that control over Diaz was quickly established. Id. at 17:48; see, also, Santiago, 2009 WL 693642, at *5.

The second Whitley factor requires me to examine "the relationship between the need and the amount of the force that was used." Whitley, 475 U.S. at 321. The video reveals that Diaz was quickly overpowered by Aberts and Simione. Video Tr. 17:04-41. When they reentered his cell, Diaz almost immediately was pinned down by Simione and Aberts. After pushing Diaz to the back of the cell and onto the bed, Aberts climbed on top of him and used his knees to establish control of Diaz, while Simione restrained Diaz near Diaz's head and shoulders. Id. at 17:30-39. Diaz testified that Simione punched him twice during the altercation. Pl.'s Op. Br. Ex. D, Diaz Dep. 21:3-4 ("I was lying on my back and was punched twice by [Simione]"). The video punch is unclear, but Simione, whose hands were obscured, can twice be seen moving his arms near Diaz's head and upper torso in what might be viewed as a punching motion. Video Tr. 17:29, 31. However, the video unambiguously shows that Aberts used his knee to strike Diaz while Diaz was pinned to the bed by four officers and arguably after Diaz had stopped resisting. Id. at 17:31-32. Given that Diaz was restrained at this time, a jury could conclude that defendants' use of force was unnecessary and moreover was employed maliciously to cause Diaz harm.[5] See, e.g. Davis v. Berks Cnty., No. 04-01795, 2007 WL 516128, at *5 (E.D. Pa. Feb. 8, 2007) (in denying summary judgment, the court in discussing the second Whitley factor found that once the inmate was "fully secured" continuing to "choke, kick and punch him . . . [was] not

---

[5] Aberts also can be heard yelling at Diaz after kneeing him: "don't you fucking come up." Id. at 17:32. Further, Aberts admitted in his deposition that he was angry when he reentered the cell after Diaz had tried to slam his hand in the door. Pl.'s Op. Br. Ex. C, Aberts Dep. 114:9-16.

necessary to enforce" prison rules). Thus, I find that this factor militates against summary judgment.

The third <u>Whitley</u> factor requires me to address the "extent of the injury inflicted." <u>Whitley</u>, 475 U.S. at 321. Defendants argue that Diaz's refusal of medical attention establishes that Diaz only suffered de minimis injury and thus defendants did not employ excessive force as a matter of law. Def.'s Mot. Summ. J. ECF p. 12-13. This argument misplaces the analysis.[6] The Court of Appeals instructs that "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." <u>Smith</u>, 293 F.3d at 648. While "the Eighth Amendment does not protect an inmate against an objectively de minimis use of force," prison officials who "maliciously and sadistically use force against an inmate violate contemporary standards of decency even if the resulting injuries are not significant." <u>Id.</u> at 647-48. Thus, "de minimis injuries do not necessarily establish de minimis force." <u>Id.</u> at 649; <u>see also</u> <u>Brooks</u>, 204 F.3d at 107 (holding that, even if minor injuries were

---

[6] The Court of Appeals has considered and rejected this argument. In <u>Brooks</u>, defendants asserted that the absence of medical evidence supporting the alleged violent beating was "conclusive proof" that the force they used was de minimis by constitutional standards. <u>Brooks</u>, 204 F.3d at 107. Rejecting this argument and reversing the district court's grant of summary judgment, the Court of Appeals held that "the absence of objective proof of non-de [minimis] injury does not alone warrant dismissal" because "[r]equiring objective or independent proof of minor or significant injury" would "place protection from injury, instead of protection from wanton force, at the hub of the Eighth Amendment." <u>Id.</u> at 108.

Similarly, in <u>Smith</u>, the Court of Appeals reversed the district court's grant of summary judgment where the district court had determined that the plaintiff's injuries were "so minor that the defendants' account of the incident [wa]s more credible than Smith's, and/or that the force used was not of constitutional dimension." <u>Smith</u>, 293 F.3d at 649. The Court of Appeals held that this determination was "an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." <u>Id.</u>; <u>see also</u> <u>Wilkins v. Gaddy</u>, 130 S. Ct. 1175, 1178 (2010) ("The 'core judicial inquiry' [in an Eighth Amendment excessive force claim] . . . was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'") (citations omitted).

inflicted, a claim of excessive force exists where the force was maliciously applied). Here, though Diaz refused immediate medical attention, photographs taken after the incident reveal that Diaz was bleeding at least from his nose if not from his mouth following the altercation. Pl.'s Opp. Br. Ex. F.[7] "Where the defendants' actions are disputed, as they are here, the Court cannot determine that the use of force was objectively de minimis." Wesley v. Hollis, No. 03-3130, 2007 WL 1655483, at *9 (E.D. Pa. June 6, 2007); see also Smith, 293 F.3d at 649–50 (concluding that determination of the need for the application of force was more appropriately made by a jury). Thus I find that the apparent lack of serious injury to Diaz is not dispositive.[8]

More importantly, the video is ambiguous as to whether Diaz's breathing was impaired during the altercation. Diaz alleges defendants choked him during the incident as he lay handcuffed on the bed. See, e.g., Pl.'s Op. Br. ECF p. 25. The video on this point is unclear as defendants' hands are obscured while they struggle with Diaz. However, once Diaz has been pinned down for a few seconds, Aberts can be heard on the video three times instructing Diaz to grab his hand and Diaz's labored breathing is audible. Id. at 17:57-18:10. Steberger-Simione can also be heard saying, "make sure he's breathing," id. at 18:02, to which Aberts replied "he's breathing," id. at 18:04, and Aberts then repeats himself several second later. Id. at 18:11 ("That a boy; he's breathing."). While defendants both testified in their depositions that Diaz's breathing was never impaired, see Pl.'s Opp. Br. Ex. C, Aberts Dep. 121:19-21; Pl.'s Hrg. Ex. p. 2, citing Simione Dep. 91:6-8, the video is far less clear as to whether Diaz's breathing was

---

[7] Diaz also testified that he was bleeding from his gums and had a swollen temple following the altercation. Pl.'s Opp. Br. Ex. D, Diaz Dep. 23:7-24:12.

[8] In so finding I do not conclude that the injuries suffered by Diaz were de minimis or minor. Regardless of the category of injury, Diaz has adduced evidence that creates an issue of material fact as to whether the force inflicted upon him was unnecessary. See Brooks, 204 F.3d at 109.

impaired. Viewing the events depicted in the video in the light most favorable to Diaz and drawing all favorable inferences to him from the apparent concern evinced by the defendants and other officers about Diaz's impaired breathing, I find that this factor too militates against summary judgment. See, e.g., McDowell v. Sheerer, 374 F. App'x 288, 292-93 (3d Cir. 2010) (reversing a district court's grant of summary judgment based on qualified immunity on a prisoner's excessive force claim where the video capturing the incident did not "blatantly contradict" the plaintiff's account such that "no reasonable jury could believe it," quoting Scott, 550 U.S. at 380, and because material factual issues remained as to whether the plaintiff had established a violation of his constitutional rights where the Court could not determine the amount of force used because the plaintiff was "forced to the ground early in the confrontation, and the view of the body [was] completely obstructed by the bodies of at least five officers while they handcuff[ed] and shackle[d] him").

The fourth Whitley factor requires my analysis of the "extent of the threat to the safety of staff and inmates." Whitley, 475 U.S. at 321. Defendants argue that Aberts feared that Diaz "would continue to pull on the handcuffs," Def.'s Mot. Summ. J. ECF p. 6-7, and in deposition testimony Aberts contended that his "arms were ultimately going to be inside of the cell." Pl.'s Opp. Br. Ex. C, Aberts Dep. 115:15-16. This may well be true, but Diaz was handcuffed and already locked in his cell when the altercation took place. Upon reentry into the cell, Diaz was immediately surrounded and subdued by four corrections officers. It is not apparent that Diaz had any opportunity or made any attempt to strike the defendant officers apart from pulling back on the tether. Video Tr. 16:47-50. Aberts can be heard on the video shouting that Diaz had shut him in the door, id. at 17:16, but he later recanted, testifying at his deposition that "the door never actually closed on any part of his body." Pl.'s Opp. Br. Ex. C, Aberts Dep. 131:12-18.

Thus, taking into account that Diaz was already in restraints and in his cell when the incident took place, I find the extent of the threat he posed to the staff or other inmates was not considerable. See, e.g., Davis v. Berks Cnty., No. 04-01795, 2007 WL 516128, at *5 (E.D. Pa. Feb. 8, 2007) ("Even though [the plaintiff] bit [the defendant correction officer], [the plaintiff] was handcuffed throughout the incident, successfully placed back in his cell where he could have been locked down, and under the control of multiple guards. Therefore, the extent of the threat to the staff and other inmates could not have been high.").

Finally, under the fifth Whitley factor, I must consider "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321. The altercation, from the officers reentry of the cell to their efforts to assure that Diaz is still breathing, spans just over a minute. Given the video's ambiguity as to what precisely occurred in that interval, the extent and necessity of each officer's participation in the incident and the question of whether the force applied to Diaz supports a "reliable inference of wantonness in the infliction of pain," Brooks, 204 F.3d at 106, quoting Whitley, 475 U.S. at 322, this case presents "a classic factual dispute to be resolved by the fact finder." Smith, 293 F.3d at 650; see also McDowell, 374 F. App'x at 293. Thus I find that summary judgment on Diaz's excessive force claim is inappropriate.

b.  Failure to Intervene

Aberts argues that summary judgment is appropriate on Diaz's failure to intervene claim because there was no underlying constitutional violation and thus Aberts was not required to intervene. Def.'s Mot. Summ. J. ECF p. 14-15. Aberts also contends that even if there was an underlying violation, Aberts did not have a reasonable opportunity to intervene as "he never viewed [ ] Simione strike [Diaz], and [Simione's] use of force lasted approximately one minute." Id. at 15. Moreover, Aberts asserts that requiring "an officer who is engaged in the same

stressful, fast-paced and violent encounter as the alleged violative officer to somehow disengage in disregard of his own safety would impose an artificial and impossible burden for officers." Id.

As the Court of Appeals states, "[t]he restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." Evans v. Cameron, 442 F. App'x 704, 706 (3d Cir. 2011), quoting Smith, 293 F.3d at 651. Thus "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith, 293 F.3d at 650. In Smith, the Court of Appeals identified the elements of a failure to intervene claim: a plaintiff must prove that (1) the officers had a duty to intervene; (2) the officers had the opportunity to intervene; and (3) the officers failed to intervene. Crawford v. Beard, No. 04-0777, 2005 WL 139082, at *5 (E.D. Pa. Jan. 19, 2005), aff'd, 173 F. App'x 176 (3d Cir. 2006), citing Smith, 293 F.3d at 650-51. However, "[f]or there to be a failure to intervene, it follows that 'there must exist an underlying constitutional violation.'" Santiago v. Fields, No. 05-4884, 2009 WL 693642, at *4 (E.D. Pa. Mar. 12, 2009), quoting Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005); see also Sanders v. City of Union Springs, 207 F. App'x 960, 965–66 (11th Cir. 2006).[9] And an officer is only liable if there is a realistic and reasonable opportunity to intervene. Smith, 293 F.3d at 651.

---

[9] As in an excessive force claim, here "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Evans, 442 F. App'x 704, 708 (3d Cir. 2011), quoting Smith, 293 F.3d at 648. Indeed, "de minimis injuries do not necessarily establish de minimis force." Evans, 442 F. App'x at 708, quoting Smith, 293 F.3d at 649. Whether, as in Smith, "[a] properly instructed fact finder could, after considering all of the evidence, conclude that [Diaz's] injuries were so minor that the defendants' account of the incident is more credible than [Diaz's] . . . is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." Evans, 442 F. App'x at 708 (citations omitted).

Because I find that issues of material fact exist to preclude summary judgment on Diaz's excessive force claim, I find similarly that the record reveals issues of material fact as to whether Aberts had a realistic opportunity to intervene and whether he failed to do so. While the video is ambiguous as to whether Simione punched or choked Diaz, as his hands are obscured, I cannot say that no reasonable jury could conclude that Aberts observed unconstitutional conduct, had a reasonable opportunity to intervene and failed to do so. See Cooper v. Roberts, No. 08-346, 2009 WL 2996479, at *5 (E.D. Pa. Sept. 16, 2009) (denying summary judgment on failure to intervene claim and reasoning that "to the extent that a fact-finder concludes that the force employed by [defendant] was excessive, there also exist[ ] genuine issues of fact as to whether the remaining Defendants were in a position to intervene and, if so, whether they acted reasonably in failing to intervene."); see also Smith v. Donate, No. 10-2133, 2012 WL 3537017, at *14 (M.D. Pa. June 15, 2012) (denying summary judgment on failure to intervene claim because "hotly contested factual record [did] not permit an assessment as a matter of law concerning whether excessive force was, in fact, used in this case, [and] this factual dispute prevents us from reaching any final conclusions on summary judgment as to [the failure to intervene] claim"), report and recommendation adopted, No. 10-2133, 2012 WL 3537008, at *6 (M.D. Pa. Aug. 15, 2012). Thus I find that sufficient issues of material fact exist to preclude summary judgment on Diaz's failure to intervene claim against Aberts.

c.   Qualified Immunity

Aberts and Simione contend that they are entitled to summary judgment because they are protected by qualified immunity. I find that Diaz has raised issues of material fact as to whether defendants' conduct violated his clearly established constitutional rights such that deciding the issue of qualified immunity at this stage of the proceedings is premature.

The doctrine of qualified immunity insulates government officials who are performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The affirmative defense of qualified immunity should be applied at the earliest possible stage in litigation because the defense provides immunity from suit and not from damages only. Hunter v. Bryant, 502 U.S. 224, 227 ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."). The Supreme Court has established a two-part analysis governing whether an official is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). In considering defendants' claims of qualified immunity I must assess: (1) whether the facts alleged by Diaz show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. Id.; see also Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two Saucier prongs in any order, at their discretion. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Where the qualified immunity issue is centered on whether a violation of rights has occurred at all, or on whether the rights allegedly invaded were clearly established at the time the alleged violation occurred, the Court is confronted with a pure issue of law which is appropriately resolved at the earliest possible stage of the case. In re City of Phila. Litig., 49 F.3d 945, 961 (3rd Cir. 1995). If Diaz fails to satisfy either prong of the Saucier test, defendants are entitled to judgment as a matter of law. Pearson, 555 U.S. at 232. However, the Court of Appeals has cautioned that, "[j]ust as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Curly v.

Klen, 298 F.3d 271, 278 (3d Cir. 2002). Thus the Court of Appeals requires identification of the factual issues pertinent to each official claiming qualified immunity and analysis of the law as it applies to the determination of each official's qualified immunity claim. Griffin-El v. Beard, 411 F. App'x 517, 519 (3d Cir. 2011). If there are material disputes as to facts relevant to the qualified immunity analysis, summary judgment is inappropriate. See Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005). Finally, although the qualified immunity inquiry is not a merits analysis, the Whitley test serves as a touchstone of the established law of which a reasonable officer may be presumed to have been aware. Giles, 571 F.3d at 326 (finding summary judgment on inmate's excessive force claim on qualified immunity grounds was precluded by a genuine issue of material fact as to whether inmate had ceased resisting before correctional officers kicked or kneed him in the side).

### i.     Whether There Was a Constitutional Violation

I find that Diaz has raised material issues as to whether there was a violation of his constitutional rights such that summary judgment based on qualified immunity is not appropriate at this time. From the video of the altercation, a reasonable jury could conclude that Aberts was malicious and sadistic, Smith, 293 F.3d at 649, or "[wanton] in the infliction of pain," Brooks, 204 F.3d at 106, quoting Whitley, 475 U.S. at 322, in kneeing Diaz while Diaz was handcuffed and pinned down. Similarly, a reasonable jury could conclude that Simione was also malicious and sadistic, or "[wanton] in the infliction of pain," Brooks, 204 F.3d at 106, if it found that he choked or punched Diaz while Diaz was in restraints and pinned to the bed by three other officers. Further, regarding Diaz's failure to intervene claim against Aberts, a reasonable jury could also conclude from the record that Aberts had a realistic opportunity to prevent Simione's violent action and failed to do so. Thus, because there are sufficient facts in the record to allow a

reasonable jury to determine that a constitutional violation occurred, I find that Diaz has satisfied the first prong of the qualified immunity analysis. See, e.g., McDowell, 374 F. App'x at 292-93 (3d Cir. 2010) (reversing a district court's grant of summary judgment based on qualified immunity on prisoner's excessive force claim where the video capturing the incident did not "blatantly contradict" the plaintiff's account such that no reasonable jury could believe it," quoting Scott, 550 U.S. at 380, and because material factual issues remained as to whether the plaintiff had established a violation of his constitutional rights); Wesley v. Hollis, No. 03-3130, 2007 WL 1655483, at *13 (E.D. Pa. June 6, 2007) (declining at summary judgment to apply qualified immunity because there was "sufficient evidence to raise a genuine issue of fact as to whether [a corrections officer defendant] used excessive force").

ii.     *Whether the Right Was Clearly Established at the Time of the Altercation*

At the time of the altercation, I find it was clearly established that an officer could not punch, knee or otherwise use gratuitous force against an inmate who had been subdued. Giles, 571 F.3d at 326; see also Skrtich v. Thornton, 280 F.3d 1295, 1303 (11th Cir. 2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued"). While qualified immunity analysis and summary judgment legal standards for a constitutional claim are distinct inquiries not "susceptible to fusion, and [ ] denying summary judgment because a material issue of fact remains on an excessive force claim is improper on a qualified immunity inquiry," Giles, 571 F.3d at 329, citing Saucier, 533 U.S. at 194, I find that, as they were in Giles, the disputed facts here are material to the qualified immunity analysis.

The question of whether Diaz was fully subdued or not once he was on the ground with Aberts sitting on him "makes a difference as to whether a reasonable official would have

considered the force used reasonable and necessary under the circumstances." Giles, 571 F.3d at 329. It is also relevant to the necessity of Aberts's use of his knee once on top of Diaz. Similarly, the necessity of Simione's actions, including whether he punched or choked Diaz, is in part contingent upon the level of Diaz's resistance. "Denying summary judgment on the basis of [these] factual dispute[s], therefore, is not an improper 'fusion' of qualified immunity analysis and the merits analysis of [Diaz's] constitutional claim." Id.

As for Diaz's failure to intervene claim, I find that at the time of the incident it was clearly established that liability can attach for a correctional officer's failure to intervene when another officer violates an inmate's constitutional rights. See Garbacik v. Janson, 111 F. App'x 91, 93-94 (3d Cir. 2004) (denying qualified immunity for officer who failed to intervene to prevent fellow officer's use of excessive force and stating that in 1995 it was clear that "liability will lie if an officer 'had knowledge of and acquiesced in' a § 1983 violation'"), quoting Baker v. Monroe Twp., 50 F.3d 1186, 1190-1191 (3d Cir. 1995). Therefore summary judgment based on qualified immunity is not appropriate as to either of Diaz's claims.

While I am mindful of the stresses and difficulties facing correctional officers who on a daily basis are required to make "split-second judgments" about the necessity of force in "tense, uncertain, and rapidly evolving" circumstances, Graham v. Connor, 490 U.S. 386, 396–97, these circumstances will not insulate them from liability if their actions support "a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322. The dispute in this case "goes beyond a mere dispute 'over the reasonableness of a particular use of force' . . . [but extends to issues surrounding] the amount of force used[, the need for its application and the relationship between those two matters] and, construing the disputed facts in favor of [Diaz], a reliable inference of the wantonness in the infliction of pain exists. Accordingly, [these issues] must be

left to a jury." <u>Santiago v. Fields</u>, No. 05-4884, 2009 WL 693642, at *10 (E.D. Pa. Mar. 12, 2009).

An appropriate Order follows.