IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ISRAEL DIAZ | : | CIVIL ACTION |
| | : | NO. 10-5939 |
| v. | : | |
| | : | |
| SERGEANT WILLIAM ABERTS | : | |
| OFFICER RODNEY SIMIONE | : | |
| | : | |
| | : | |
| O'NEILL, J. | | MAY 28, 2013 |

## MEMORANDUM

In this action, plaintiff Israel Diaz asserts three claims under 42 U.S.C. 1983 for

violations of his Eighth Amendment rights in connection with an incident that took place on May

14, 2010 while he was incarcerated at Lancaster County Prison. Specifically, Diaz brings claims

for "malicious and sadistic use of force" under the Eighth Amendment against defendants

Sergeant William Aberts and Officer Rodney Simione's and a claim for "failure to intervene"

under the Eighth Amendment against defendant Aberts only.[1]

Now before me are five motions in limine brought by plaintiff Israel Diaz (Dkt. Nos. 47-

51) and defendant Sergeant William Aberts and Officer Rodney Simione's responses thereto

(respectively, Dkt. Nos. 57-61. For the following reasons I will: grant in part and deny in part

Diaz's motion to exclude evidence of Diaz's prior prison conduct (Dkt. No. 50); grant in part and

deny in part Diaz's motion to exclude evidence of Diaz's prior criminal convictions (Dkt. No.

51); grant Diaz's motion to exclude evidence of defendants' prior good acts, employment

disciplinary records or involvement in prior lawsuits (Dkt. No. 49); grant Diaz's motion to

---

[1] A more extensive description of the events giving rise to these claims can be found in
my February 4, 2013 opinion denying defendants' motion for summary judgment as to all
claims. See Dkt. No. 42.

preclude any comments by defense counsel or questioning of defendants regarding defendants' feelings about being sued at trial (Dkt. No. 47); and deny Diaz's motion to preclude any "Golden Rule" comments (Dkt. No. 48).

## I.    Discussion

### A. Evidence of Diaz's Prior Prison Misconduct

Diaz moves to exclude "all evidence of prison misconduct, testimonial or otherwise." Dkt. No. 50 at ECF p. 4. "Such evidence is irrelevant because [his] alleged acts of misconduct have no bearing on whether he was the victim of excessive force on May 14, 2010, the incident underlying this case." Id.. Additionally, Diaz argues that even if this evidence is relevant, I should exclude it under Federal Rule of Evidence 403, which permits the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Id. at ECF p. 6-7; see also Fed. R. Evid. 403. Diaz also argues that evidence of his misconduct should not be admissible as impeachment evidence pursuant to Federal Rule of Evidence 608. Id. at ECF p. 10.

Defendants counter that part of the inquiry governing Diaz's Eighth Amendment claims is the reasonableness of the force they applied, which is determined based in part upon "what the defendant officers knew and reasonably believed at the time." Dkt. No. 60 at ECF p. 5. Thus, they argue, Diaz's "prior prison misconducts for violent or assaultive acts are admissible as relevant to [defendants] subjective state of mind, knowledge, and motive or intent" which is relevant to the inquiry as to whether defendants' use of force was reasonable. Dkt. No. 60 at ECF p. 10. Defendants further argue that the probative value of this evidence is not substantially

outweighed by the danger of unfair prejudice and further, that this evidence is proper impeachment evidence. Id. at ECF p. 11

    i. Rule 404 and Evidence of Diaz's Other Acts

The admissibility of character evidence and evidence of a party's crimes, wrongs or other acts is governed by Federal Rule of Evidence 404.[2] Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a). Evidence of a crime, wrong, or other act is also not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. Fed. R. Evid. 404(b)(1).[3] However, this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). For other acts evidence to be admissible under the exceptions listed in Rule 404(b), (1) the evidence must have a proper purpose; (2) it must be relevant under Rule 401 and 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it was admitted. Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 520 (3d Cir. 2003).

"A proper purpose is one that is probative of a material issue other than character." United States v. Smith, 12-1642, 2012 WL 5984695, *3 (3d Cir. Nov. 30, 2012), quoting United

---

[2] When a party seeks to introduce evidence of a witness's character, the rules that govern the admissibility of such evidence are Federal Rules of Evidence 607, 608 and 609. See Fed. R. Evid. 607-609; Fed. R. Evid. 404(a)(3).

[3] "Other acts" as used in rule 404 addresses not merely prior bad acts in a criminal case but also subsequent good acts, and the rule applies equally to criminal and civil cases. Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 520 (3d Cir. 2003).

States v. Green, 617 F.3d 233, 250 (3d Cir. 2010) (quotation omitted). That is, other acts evidence can be offered for

> a purpose other than showing that an individual has a propensity or disposition for certain activity . . . [In admitting such evidence] a court must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must include no link involving an inference that a bad person is disposed to do bad acts.

Ansell, 347 F.3d at 520-21 (citations omitted). I find that evidence of Diaz's prior prison misconduct can be offered for the limited proper purposes of demonstrating a defendants' knowledge of plaintiff's prior violent misconduct at the time of the incident giving rise to his excessive force claim, and for evaluating the reasonableness of defendants' and whether they used excessive force. Smith v. City of Phila., No. 06-4312, 2009 WL 3353148, at *2-3 (E.D. Pa. Oct. 19, 2009).

Additionally I find that defendants' knowledge of Diaz's prior prison misconduct is relevant to Diaz's Eighth Amendment claims. Evidence is relevant if it has "any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. "If the [defendants] were aware of [Diaz's] prior criminal conduct or discipline while incarcerated . . . and this information formed a basis to evaluate the level of threat posed by [Diaz], knowledge of such history would be relevant to the inquiry as to whether the force used against [Diaz] was reasonable under the circumstances." Smith v. City of Phila., 2009 WL 3353148, at *2, citing Virgin Islands v. Carino, 631 F.2d 226, 229 (3d Cir. 1980) ("If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as tending to show a reasonable apprehension on the part of the accused.") (internal citations and quotation marks omitted).

To the extent defendants knew about it at the time of the incident, Diaz's prior prison conduct, specifically incidents of violence or threats of violence made against other inmates or prison staff, is relevant to the inquiry under the Eighth Amendment as to whether the force that defendants applied was reasonable and is specifically probative of defendants' perception of the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the threat posed by Diaz to the safety of the prison staff. See Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002); Whitley v. Albers, 475 U.S. 312, 321 (1986). However, this finding does not mean that every incident of misconduct is relevant or admissible. Indeed defendants do not propose to "introduce all of [Diaz's] numerous misconducts so as . . . to unnecessarily delay the trial or delve into some areas that are not especially relevant. Rather, Defendants will focus on those instances involving violence, or threats of violence, towards prison and medical staff." Dkt. No. 60 at ECF p. 6 n.1.[4] In support of their opposition to Diaz's motion, defendants have attached excerpts from the depositions of defendants as well as two other corrections officers involved in the incident with Diaz that brought about this litigation.

---

[4] I will also preclude testimony regarding Diaz's alleged reputation for throwing bodily fluids because I find that this conduct, though repugnant and potentially harmful to its victim, is not conduct demonstrative of a reputation for violence or threats of violence. Compare 18 Pa. Cons. Stat. Ann. § 2703.1 ("Aggravated Harassment by Prisoner") with 18 Pa. Cons. Stat. Ann. § 2703 ("Assault by Prisoner"). Therefore this conduct is not probative of defendants' knowledge and state of mind at the time of the incident because it could not have reasonably informed their judgment as to whether the force that defendants applied was reasonable, the defendants' perception of the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the threat posed by Diaz to the safety of the prison staff. Smith v. Mensinger, 293 F.3d at 649.

Moreover, to the extent that defendants perceived a risk of this conduct on May 14, 2010, that risk was minimal as Diaz was handcuffed prior to entry of the prison staff into his cell, remained in handcuffs for the duration of the encounter and was pinned to his bed by four corrections officers within seconds of the officers entering his cell for the second time. See Order Denying Defendants' Motion for Summary Judgment, Dkt. No. 42 ECF p. 1-3. Thus Diaz's alleged reputation for throwing bodily fluids is not probative of the reasonableness of defendants' conduct and whether they applied excessive force in this case.

See Dkt No. 60 Ex. A-D. Defendants contend that this testimony shows that they were "aware of [Diaz's] history and other behavior on the date in question and that factored into their state of mind, concerns and actions." Dkt. No. 60. ECF p. 6.

After reviewing the deposition excerpts for testimony regarding instances involving violence or threats of violence towards prison and medical staff made by Diaz, it is clear that Aberts was aware that Diaz had been "incarcerated off and on over the last 19 years," and knew him to be "hostile, verbally aggressive. . . . [He t]hreatens people. Is definitely unpredictable from minute to minute." Dkt No. 60 Ex. A, Aberts Dep. 96:5-11. Additionally, Aberts testified that he had had a prior physical altercation with Diaz "after [Diaz] had [allegedly] assaulted an officer [believed to be named Morales, in approximately 2009]." Id. at 99:5-21; 100: 4-6 ("I went to place handcuffs on [Diaz] and he began to struggle. A struggle ensued."). Similarly, Simione testified at his deposition that he was familiar with Diaz and knew him to be "very manipulative. Very aggressive at times. . . ." Dkt No. 60 Ex. C, Simione Dep. 63:23-64:4. Simione was also one of the officers who responded to Diaz's alleged altercation with Morales and testified that Diaz "hit Officer Morales from behind . . . [then] ran out the door . . . [and] out in the hallway and [Diaz] was placed on the floor. Id. at 65:14-67:2. However, Simione was not physically involved in subduing Diaz in connection with that incident and testified that he had no other interactions with Diaz prior to May 14, 2010. Id. at 67:3-21.[5]

---

[5] Defendants attach excerpts from two other corrections officers who participated in the May 14, 2010 incident. Officer Shepos testified that Diaz "has fits . . . and will cause . . . physical problems . . . to anybody around him" and that "[Diaz] likes to throw sucker punches, see e.g., Dkt. No. 60 Ex. D, Shepos Dep. 34:2-6. Shepos also notes that "at other times [Diaz] can be the nicest person you want to talk to." Id. at 34:6-8. Sergeant Steberger also testified that she recalled "specific interactions" with Diaz but that she was unsure of the dates of those interactions; she also remarked that she recalled Diaz "assaulting an officer. Striking him in the back of the head sveral times. . . . Striking another officer at another time in my early years as a correctional officer. What we call sucker punching . . . Assaults on staff." Dkt. No. 60 Ex. B,

Given this testimony, I find that defendants (and the nonparty corrections officers) had knowledge of Diaz's prior prison misconduct and that this misconduct is relevant to the extent that it informed defendants' decision making on May 14, 2010. Indeed, it "points directly to the reasonableness of Defendant Officers' conduct and is probative of whether Defendant Officers used excessive force." Smith v. City of Phila., 2009 WL 3353148, at *4. However, as reflected in their deposition testimony, defendants and the nonparty corrections officers possessed a very circumscribed knowledge about Diaz on May 14, 2010, and nothing in the record suggests the defendants or their colleagues had any knowledge of Diaz's documented prison misconduct or whether he was subject to discipline in connection with the incidents with which they were familiar at the time. Thus I find that evidence of Diaz's prior misconduct is admissible only to the extent that defendants and the nonparty corrections officers can testify about their personal knowledge of Diaz's conduct while in prison prior to the May 14, 2010 incident, and it is admissible only for the limited purpose of establishing defendants' knowledge and state of mind before resorting to the use of force against Diaz. Diaz's disciplinary records themselves are not admissible through the testimony of these witnesses as nothing in the record indicates that they had any familiarity with Diaz's prison record on May 14, 2010 beyond what they have already testified to under oath.

Finally, I find that the testimony of defendants and other nonparty corrections officers regarding their knowledge of Diaz's prior prison misconducts involving violence or threats of violence should not be excluded under Federal Rule of Evidence 403 because the probative value of this evidence outweighs its potential for unfair prejudice. Smith v. City of Phila., 2009 WL

---

Steberger Dep. 65:14-66:5. However, as Steberger cannot recall when these particular assaults took place it is unclear how they could have informed her perception of the need for force on May 14, 2010. See Dkt. No. 60 Ex. B, Steberger Dep. 66:6-23.

7

3353148, at *4. "Although presentation of [Diaz's] prior bad acts [ ] incidents . . . may carry the risk of suggesting to the jury that [Diaz] behaved in a similar manner during the incident in question, this risk may be reduced by an instruction charging the jury to consider the evidence only for its limited purpose." Id. I will instruct the jury accordingly.

### ii. Rule 608 and Evidence of Diaz's Other Acts Offered for Purposes of Impeachment

Diaz asserts that defendants may also attempt to use extrinsic examples of Diaz's alleged misconduct, such as prison records, to attack his credibility as a witness, evidence that Diaz contends is barred by Federal Rule of Evidence 608. Dkt. No 50 at ECF p. 10. Defendants respond that Diaz's "prison misconducts are being introduced because they are relevant to the May 14, 2010 incident, the Defendant's [sic] prior knowledge of Plaintiff, and to rebut claims that Plaintiff has made in discovery and likely will make at trial." Dkt. No. 60 at ECF p. 11. Further defendants argue that evidence that may not be used solely for purposes of impeachment can be admitted if offered for a permissible purpose. Id. Defendants also contend that Rule 608 allows cross-examination on specific instances of a witness's conduct if they are probative of a witness's character for truthfulness. Id. at ECF p. 12. Thus they argue that "it is premature, without benefit of Plaintiff's testimony, to determine what prior misconduct will be necessary to defending Plaintiff's claim." Id.

Federal Rule of Evidence 608 allows a witness's credibility to be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. Fed. R. Evid. 608(a). Further, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be

8

inquired into if they are probative of the character for truthfulness or untruthfulness of" the witness or of another witness about whose character the witness is being cross-examined. Fed. R. Evid. 608(b).

There is no authority before me that suggests that Diaz's prison records themselves should be treated as criminal convictions under rule 609 and thus I find that they are extrinsic evidence facially barred by rule 608. While defendants may produce witnesses who testify about Diaz's character for untruthfulness, as defendants and the nonparty corrections officers did during their depositions, extrinsic evidence in the form of Diaz's prison records is not admissible to prove specific instances of a witness's conduct in order to attack Diaz's character for truthfulness, and thus I will not permit defendants to enter extrinsic evidence of Diaz's prison misconduct for that purpose. Fed. R. Evid. 608(b). Should Diaz testify, defendants on cross examination can inquire about specific instances of prison misconduct to the extent that those instances are probative of Diaz's character for truthfulness.[6]

## B. Evidence of Diaz's Past Criminal Convictions

Diaz also moves to exclude evidence of his prior criminal convictions. "With one exception . . . , a conviction for false identification, [Diaz's] arrests and convictions can be grouped into the category of crimes involving disorderly and assaultive behavior" including several charges arising out of Diaz's behavior in prison. Dkt. No. 51 at ECF p. 5. Diaz argues that this evidence is irrelevant, and further "would very likely cause the jury to rule against [Diaz] merely because of his unrelated conduct towards guards and prison personnel." Id. Moreover, Diaz argues that this evidence is inadmissible as character evidence and finally, that

---

[6] To the extent that Diaz's prison misconducts and disciplinary history involve acts of violence, I address the extent to which those acts are probative of Diaz's character for truthfulness below.

9

with the lone exception of his conviction for false identification, none of his prior convictions are probative of Diaz's character for truthfulness and thus are inadmissible as impeachment evidence under Rule 609. Id.

Defendants respond that Diaz's history of violence is relevant because in an excessive force case a jury must "consider the Defendants' subjective state of mind and knowledge at the time of the incident" which includes "all the relevant facts and circumstances that [the defendants] reasonably believed to be true at the time of the encounter." Dkt. No. 61 at ECF p. 6. In support of their contention that Diaz's prior criminal convictions informed defendants' state of mind and knowledge at the time of the May 14, 2010 incident defendants again submit excerpts from their depositions and the depositions of other nonparty corrections officers who participated in the incident. Dkt. No. 61 Ex. B-E. Defendants also argue that Diaz's convictions are admissible as impeachment evidence under rule 609. Id. at ECF p. 11.

To address this motion I must assess: 1) whether Diaz's past criminal convictions are relevant to his claims against the defendants; 2) whether evidence of Diaz's past criminal convictions is admissible as probative of the defendants knowledge and state of mind (or for some other purpose not barred by rule 404) on May 14, 2010; and, 3) whether evidence of Diaz's past criminal convictions is admissible to impeach his testimony and to attack his character for truthfulness if he takes the stand under rule 609.

i. The Relevance of Diaz's Prior Criminal Convictions

As above, I find that "[i]f the [defendants] were aware of [Diaz's] prior criminal conduct or discipline while incarcerated . . . and this information formed a basis to evaluate the level of threat posed by [Diaz], knowledge of such history would be relevant to the inquiry as to whether

10

the force used against [Diaz] was reasonable under the circumstances." Smith v. City of Phila.,
2009 WL 3353148, at *2. Thus I proceed to the next prong of my inquiry.

## ii. The Extent to Which Diaz's Prior Convictions Informed Defendants' Knowledge and State of Mind on May 14, 2010

As above, the admissibility of a party's crimes, wrongs or other acts is governed by
Federal Rule of Evidence 404.[7] Evidence of a person's character or character trait is not
admissible to prove that on a particular occasion the person acted in accordance with the
character or trait. Fed. R. Evid. 404(a). Evidence of a crime, wrong, or other act is not
admissible to prove a person's character in order to show that on a particular occasion the person
acted in accordance with the character. Fed. R. Evid. 404(b)(1). However, this evidence may be
admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). For other
acts evidence to be admissible under the exceptions listed in Rule 404(b), (1) the evidence must
have a proper purpose; (2) it must be relevant under Rule 401 and 402; (3) its probative value
must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to
consider the evidence only for the limited purpose for which it was admitted. Ansell v. Green
Acres Contracting Co., Inc., 347 F.3d 515, 520 (3d Cir. 2003).

As to the first and second prong of the test articulated in Ansell, I find that that to the
extent defendants knew about it at the time of the incident, Diaz's prior criminal convictions are
relevant as to the reasonableness of the force that defendants applied, and are specifically
probative of defendants' perception of the need for the application of force, the relationship
between the need and the amount of force that was used, and the extent of the threat posed by

---

[7] As noted above, when a party seeks to introduce evidence of a witness's character,
Federal Rules of Evidence 607-609 govern the admissibility of such evidence. See Fed. R. Evid.
607-609; Fed. R. Evid. 404(a)(3).

11

Diaz to the safety of the prison staff. See Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002); Whitley v. Albers, 475 U.S. 312, 321 (1986). In order to determine whether defendants had knowledge of these convictions prior to the incident and whether this knowledge informed their actions on that day, I will again look to the deposition testimony submitted by defendants.

With the exception of two pages of Simione's deposition erroneously submitted with the exhibit containing excerpts from Sergeant Steberger's deposition, see Dkt. No. 61 Ex C, ECF p. 35-39, defendants' attached deposition excerpts are identical to those pages I reviewed above for the purposes of the motion to exclude evidence of Diaz's prior prison misconduct. They thus seemingly militate toward an identical conclusion: testimony regarding Diaz's prior criminal convictions is admissible only to the extent that the defendants had personal knowledge of Diaz's criminal convictions prior to the May 14, 2010 incident. However, I find nothing in the record that suggests defendants or the nonparty corrections officers were at all aware of Diaz's convictions with any specificity, and none of the deposition testimony submitted by defendants suggests that any of them knew the reasons for Diaz's incarceration at the time of the incident. Thus testimony or records of the convictions themselves are not admissible through the defendants or the nonparty corrections officer witnesses because nothing in the record evidences that they had any personal knowledge regarding the offenses for which Diaz was incarcerated prior to May 14, 2010. Therefore such evidence cannot demonstrate the defendants' knowledge or state of mind on May 14, 2010 and is not admissible for that purpose.[8]

_____

[8] As noted above, "[i]f the [defendants] were aware of [Diaz's] prior criminal conduct or discipline while incarcerated . . . and this information formed a basis to evaluate the level of threat posed by [Diaz], knowledge of such history would be relevant to the inquiry as to whether the force used against [Diaz] was reasonable under the circumstances." Smith v. City of Phila., 2009 WL 3353148, at *2. In contrast to their knowledge of Diaz's prior prison misconduct, the defendants and nonparty corrections officers did not testify that they had personal knowledge of

### iii. Whether Evidence of Diaz's Past Criminal Convictions is Admissible Under Rule 609 for Attacking Diaz's Character for Truthfulness

Federal Rule of Evidence 609 describes the circumstances in which evidence of a prior criminal conviction can be admitted to attack a witness's character for truthfulness. For this purpose, Rule 609 divides criminal convictions into two categories: 1) crimes that were punishable by death or by imprisonment for more than one year, Fed. R. Evid. 609(a)(1); and 2) crimes that a court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement. Fed. R. Evid. 609(a)(2). While the latter simply "must be admitted," Fed. R. Evid. 609(a)(2),[9] the former category of convictions "must be admitted, *subject to Rule 403.*" Fed. R. Evid. 609(a)(1)(A) (emphasis added). It is to this former category that I now turn.

Rule 403 states that: "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

---

Diaz's prior criminal convictions; thus evidence regarding Diaz's criminal convictions cannot demonstrate defendants' knowledge or state of mind on May 14, 2010.

[9] Diaz argues that his "one conviction for false identification to law enforcement has minimal probative value with respect to [Diaz's] credibility." Dkt. No. 51 ECF p. 7 n.1. However Rule 609(a)(2) is clear that evidence of a criminal conviction must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement. Fed. R. Evid. 609(a)(2).

In Pennsylvania, "[a] person commits [the offense of false identification to law enforcement authorities] if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law." 18 Pa. Cons. Stat. Ann. § 4914. Thus, because the underlying crime required showing that Diaz made a false statement, Diaz's conviction for false identification to which he pled guilty in 2006, see Dkt. No. 61 Ex. A ECF at p. 25, must be admitted for purposes of impeachment under Rule 609 even if it "has minimal probative value with respect to [Diaz's] credibility." Dkt. No. 51 ECF p. 7 n.1.

13

cumulative evidence." Fed. R. Evid. 403. Rule 403 thus imposes a balancing test which, in the context of the Rule 609 inquiry assessing the extent to which a witness's prior criminal convictions are probative of the witness's character for truthfulness, requires me to consider (1) the type of crimes involved; (2) when the convictions occurred; (3) the importance of the witness's testimony to the case; and (4) the importance of the witness's credibility. See United States v. Greenridge, 495 F.3d 85, 97 (3d Cir. 2007). Applying the Greenridge factors I conclude that Diaz's other criminal convictions should not be admitted under Rule 609.

The first Greenridge factor focuses primarily on whether the witness's prior convictions are for the same or substantially the same conduct at issue in the case being tried. Prater v. City of Phila., No. 11-00667, 2012 WL 3930063, *2 (E.D. Pa. Sept. 7, 2012); Greenridge, 495 F.3d at 97; United States v. Cherry, No. 10-091, 2010 WL 3156529, at *6 (E.D. Pa. Aug. 10, 2010). When prior convictions are based on similar conduct, they generally should be "admitted sparingly" because "there is an inevitable pressure on lay jurors to believe that if he did it before he probably did it this time." Cherry, 2010 WL 3156529, at *6, citing Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967) ("convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not"). The central issue in this case is not Diaz's past crimes but rather the reasonableness of the force used by Aberts and Simione. Nevertheless, Diaz's behavior and/or his aggressiveness on May 14, 2010 "will be a factor at trial and his multiple convictions for violent and assaultive crimes may lead the jury to believe he has an aggressive character that required" Aberts and Simione to use excessive force to restrain him. Prater, 2012 WL 3930063, at *2; Lewis v. Velez, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("[A]ssault convictions skirt too close to the impermissible suggestion that the

14

plaintiff [inmate] had a propensity toward violence and acted in conformity with his aggressive predisposition."). Thus I find that this first factor weighs against admission.

The second Greenridge factor is concerned with the remoteness of convictions. Prater, 2012 WL 3930063, at *2. Defendants provide a list of Diaz's prior convictions that they seek to introduce in their briefing on this motion. Dkt. No. 61 ECF at p. 5.[10] All of these convictions

---

[10] Defendants assert that they have "previously informed Plaintiff's counsel that [they] would not seek to introduce several of Plaintiff's criminal convictions" and the defendants' brief states that the convictions "listed on pages 2, 3, and 9 . . . make up [ ] those which Defendants will seek to introduce." Dkt. No. 61 at ECF p. 4 n.1. I observe that one list of Diaz's prior convictions appears on page two (Dkt. No. 61 at ECF p. 5) of defendants' brief, nothing specifically about which convictions defendants wants to introduce appears on page three (Dkt. No. 61at ECF p. 6), and that a second, shorter list of convictions appears on page nine and continues onto page ten of the brief (Dkt. No. 61 at ECF p. 12-13). In accordance with defendants' representation that they are not seeking to introduce every prior criminal conviction, I will assume that they mean to introduce the second shorter list of convictions appearing later in the brief. See Dkt. No. 61 at ECF p. 12-13.

I also note that each list wrongly identifies Diaz as having been convicted of "five counts of aggravated assault by [sic] prisoner (18 Pa. C. S. § 2703.1) in 2012." Dkt. No. 61 ECF p. 5, 13. There is no crime in Pennsylvania called "aggravated assault by a prisoner," though there is one called "assault by prisoner." See note 4, supra; 18 Pa. C. S. § 2703. Further, according to the Lancaster County Court of Common Pleas Court Summary, attached as exhibit A to defendants' brief, Diaz in fact pled guilty to violations of "Aggravated Harassment By Prisoner," on September 5, 2012. Dkt. No. 61 ECF p. 27-28. The statute defining aggravated harassment by a prisoner states that:

> A person who is confined in . . . any State . . . correctional institution . . . commits a felony of the third degree if he . . . intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa. Cons. Stat. Ann. § 2703.1. Thus while this is not necessarily a violent crime, I find that allowing a jury to hear evidence that Diaz pled guilty to such a crime does implicate Rule 403's concerns with prejudice to the parties or the risk of misleading the jury or confusing the issues. Fed. R. Evid. 403; see also Green v. Bock Laundry Mach. Co., 490 U.S. 504, 510 (1989) ("Evidence that a litigant or his witness is a convicted felon tends to shift a jury's focus from the worthiness of the litigant's position to the moral worth of the litigant himself.").

occurred within approximately the last four years, and that recency thus weighs in favor of admission.

The third Greenridge factor looks to the importance of the witness's testimony. Prater, No. 11-00667, 2012 WL 3930063, at *2. Notwithstanding Diaz's assertion in his brief that the "resolution of this case will depend entirely on the jury's interpretation of the video that captures [defendants'] use of force against [him]," Dkt. No. 50 ECF p. 8-9, I find that this case will depend at least in part upon the jury believing Diaz as opposed to the defendants and Diaz's testimony will therefore be necessary to establish his claims. Therefore this factor weighs against admission of evidence of Diaz's prior convictions if there is a substantial risk of prejudice or jury confusion.

The final Greenridge factor concerns the importance of the witness's credibility. Greenridge, 495 F.3d at 97. The video of the May 14, 2010 incident notwithstanding, as defendants concede, Dkt. No. 61 ECF p. 10-11, Diaz's credibility as a witness will be crucial in this case. See e.g., Walker v. Horn, 385 F.3d 321, 3324 (3d Cir. 2004) (noting that the district court in an Eighth Amendment case brought by incarcerated inmate granted prisoner's motion to exclude his prior convictions for assault, firearms violations and terroristic threats because the probative value of the convictions was outweighed by the danger of unfair prejudice). While evidence of a felony conviction can be probative of credibility, see e.g. United States v.

---

Moreover, Diaz was arrested in connection with these aggravated harassment charges on April 2, 2012 (for four counts) and April 27, 2012 (one count), almost two years after the incident now at issue, according to the Lancaster County Court of Common Pleas Court Summary. Dkt. No. 61 ECF p. 27-28. Therefore, while defendants and the nonparty corrections officers may have testified to their knowledge of Diaz's reputation for conduct that is covered by the "Aggravated Harassment by Prisoner" statute, they as of May 14, 2010 could not have been aware of Diaz's guilty pleas for those specific charges because Diaz's arrests for those charges were still almost two years away, eliminating any relevance of these criminal convictions to the defendants' knowledge and state of mind in May 2010.

Johnson, 302 F.3d 139, 152 (3d Cir. 2002), I find that given the nature of Diaz's prior

convictions, the risk of prejudice to him substantially outweighs their probative value as to

Diaz's character for truthfulness. United States v. Remco, 388 F.2d 783, 786 (3d Cir. 1968),

quoting Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967) ("Acts of violence . . .

which may result from a short temper, a combative nature, extreme provocation, or other causes,

generally have little or no direct bearing on honesty and veracity"). Thus I find that evidence of

Diaz's prior criminal acts that the defendants seek to introduce pursuant to rule 609(a)(1)(A) are

not admissible to impeach Diaz's character for truthfulness.

### C. Evidence of Defendants' Prior Good Acts, Employment Disciplinary Records or Involvement in Prior Lawsuits

Diaz also moves to exclude as irrelevant testimony by defendants of their involvement in

prior lawsuits, their blemish-free disciplinary records and various good acts, which defendants

previously testified about in their depositions and that Diaz asserts are not relevant to the case.

Dkt. No. 49 at ECF p. 4-5. Diaz argues that this is merely character evidence, albeit of good

character, and that evidence of this type is barred by Federal Rule of Evidence 404 unless offered

for a permitted purpose. Id. at ECF p. 6-7, citing Ansell, 347 F.3d at 520. Diaz contends that

defendants are merely offering this evidence to establish that they do not have a propensity to use

excessive force. Dkt. No. 49 at ECF p. 7. Diaz also argues that evidence of defendants' prior

good acts is irrelevant to his request for punitive damages in connection with defendants'

conduct in this case. Id. at ECF p. 8.

Defendants respond that their prior good acts, employment disciplinary records or

involvement in prior lawsuits are relevant to their state of mind, knowledge and intent to

maintain or restore discipline during the May 2010 incident and thus should be admitted. Dkt.

No. 59 at ECF p. 7. Moreover defendants assert that the fact that defendants have not been

17

subject to disciplinary action by their employer shows that they "previously met the disciplinary and training standards set forth by Lancaster Country Prison." Id. They also argue, without citing any authority for the proposition, that the "lack of previous excessive force claims is relevant to [defendants'] intent during this incident and thus constitutes admissible character evidence of intent under [Federal Rule of Evidence] 404(b)(2)." Id. at ECF p. 6.[11]

I find that Diaz's citation of Ansell is controlling and compels that this evidence must be excluded. In Ansell, the court stated that Rule 404 "prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner." Ansell, 347 F.3d at 520, citing Gov't of the V.I. v. Pinney, 967 F.2d 912, 914 (3d Cir. 1992). If such evidence "is presented for the improper purpose of showing a propensity to act in a certain way, it is inadmissible" irrespective of whether the evidence is of prior good or bad acts or of subsequent good or bad acts. Id. ("the plain text of Rule 404(b) which addresses 'other . . . acts,' not just prior bad acts"). "Likewise, Rule 404(b) applies equally to civil, as well as criminal, cases." Id. The Court of Appeals then applied the four part balancing test that I engaged in above. See section IIA, supra.

I, however, find no need to engage in all of the Ansell balancing test in connection with the evidence of defendants' prior good acts, employment disciplinary records or involvement in prior lawsuits because defendants do not identify a proper purpose for which this evidence is being offered and so fail at the first stage of the inquiry. Defendants state that this evidence is relevant to their state of mind, knowledge and intent to maintain or restore discipline. Dkt. No. 59 ECF at p. 7. I disagree. While a blemish-free disciplinary record is laudable, it is not

---

[11] Defendants do not address the admissibility of this evidence as it relates to Diaz's request for punitive damages and I thus consider it conceded that evidence of defendants' prior history is irrelevant to the question of punitive damages stemming from defendants' conduct in this case.

evidence of a correction officer's intent and state of mind at any given moment in time.[12] Rather it presents a classic example of the type of character evidence barred by rule 404(b), that is, evidence offered for the purpose of showing that because a person has acted a certain way in the past that on a particular occasion the person acted in accordance with the character. Accordingly I will not permit such testimony.

### D. Questions and Comments Regarding Defendants' Feelings About Being Sued

Diaz also moves to preclude any comments by defense counsel or questioning of defendants regarding defendants' feelings about being sued at trial, or how defendants feel about "being hauled in to court" or "dealing with litigation," as irrelevant to the underlying case. Dkt. No. 47 ECF at p. 4-5. Defendants respond that such questioning of the witnesses and attorney argument on these matters is appropriate and provides relevant background information and that the effect of Diaz's allegations and the stress of litigation are factors that the jury must consider in assessing Diaz's request for punitive damages. Dkt. No. 57 at ECF p. 5-6. Defendants also assert that because Diaz will likely be "asked about how he feels about the alleged 'malicious' and 'sadistic' beating he claims was unjustly given to him by Defendants" it would be unjust to deprive them of defendants the opportunity to testify "as to how they feel and what they have to say about the offensive and heinous accusations leveled against them." Id. at ECF p. 6-7. I agree with Diaz.

Evidence is relevant if it has "any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Diaz brings claims under the Eighth Amendment for excessive force and failure to

---

[12] I find similarly unavailing defendants' unsupported assertion that the "lack of previous excessive force claims is relevant to [defendants'] intent during this incident and thus constitutes admissible character evidence of intent under [Rule] 404(b)(2)." Dkt. No. 59 at ECF p. 6,.

intervene in connection with events on May 14, 2010. Testimony and commentary regarding defendants' feelings about being sued are not relevant to establishing defendants' liability for events in the past, and demonstrate nothing about their state of mind at the time of the events in question. Conversely, Diaz's injuries are a central question in the excessive force inquiry, Whitley, 475 U.S. at 321, and testimony by Diaz regarding the nature and extent of his injuries properly can include emotional and mental harm he experienced as a result of his encounter with defendants. See Model Civil Jury Instructions for the District Courts of the Third Circuit, Instructions for Civil Rights Claims Under Section 1983, Instruction 4.8.1, Compensatory Damages. Finally, defendants' feelings about being sued are irrelevant to the punitive damages inquiry, the proof of which will relate to defendants state of mind at the time of the incident and not to their feelings after the fact. Accordingly I will not permit such testimony from defendants.

### E. "Golden Rule" Comments by Defense Counsel at Trial

Diaz also moves to preclude any "Golden Rule" comments, that is, comments that invite the jury to stand in the shoes of the defendants at trial, as improper and because he contends that such argument risks confusion within the jury or the possibility of prejudicial error. Dkt. No. 48 at ECF p. 5-6. Defendants respond that the excessive force inquiry requires that the jury specifically must consider all the relevant facts and circumstances that defendants reasonably believed to be true at the time of the incident as well as defendants' subjective state of mind in determining whether defendants applied force in a malicious and sadistic manner. Dkt. No. 58 ECF p. 5-6, citing Model Civil Jury Instructions for the District Courts of the Third Circuit, Instructions for Civil Rights Claims Under Section 1983, Instruction 4.10, Excessive Force, Convicted Prisoner. I agree with defendants.

The Court of Appeals addressed use of the so called "Golden Rule" remarks by counsel in Edwards v. City of Philadelphia, 860 F.2d 568, 574 (3d Cir. 1988). Though noting that the propriety of a "'put yourself in the defendant's shoes' argument, as a tool of advocacy, is doubtful because it 'encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence,'" the Court of Appeals unambiguously held that, in cases where such advocacy is employed, "a clear and complete jury instruction on the elements of the claim asserted and on the allocation of the burdens of proof, whenever given, is sufficient to cure harm caused by a 'Golden Rule' argument." Id. (citations omitted). Because the jurors in this case will be asked to consider all the relevant facts and circumstances that defendants reasonably believed to be true at the time of the incident and whether defendants used force against Diaz maliciously rather than in a good faith effort to restore prison discipline, I find that such a line of advocacy is not as improper as Diaz suggests. Further, because I will instruct the jury on the legal elements of Diaz's claims, the burdens of proof and specifically that the jury is to consider only the evidence in this case and that comments and arguments made by attorneys is not evidence, I find that such instructions will be sufficient to alleviate the risk of confusion within the jury or the possibility of prejudicial error. See e.g., Vandenbraak v. Alfieri, 209 F. App'x 185, 190 (3d Cir. 2006). I accordingly will deny the motion to exclude such argument.

An appropriate Order follows.